Macomber, J.
On the first day of August, 1868, the West Side Elevated Patented Railway Company, ,a corporation organized under the laws of the state of New York, executed and delivered a mortgage deed of trust to two trustees, to secure the payment of an issue of bonds amounting to $750,000; the property covered by the mortgage being the railroad and appurtenances from the Battery to Thirtieth street, in the city of New York, including the franchises of the company. The defendant Cowing, who succeeded to the trusteeship of the mortgage, brought an action to foreclose the mortgage for the benefit of the bond *74 holders. In that action it was ascertained that the amount of bonds outstanding and unpaid was $876,628.37.
Before the sale under such action, the plaintiff, who held bonds of the par value of $22,500, intervened by action and obtained an order for the postponement of the sale of the premises. Such order was subsequently set aside by consent, and, upon a stipulation made in open court, an order was entered in that action directing the trustee, the defendant Cowing, on the sale of the mortgaged premises, to bid for the premises as trustee for the benefit of all the holders of the bonds secured by the mortgage up to the sum of $450,000. The mortgage itself contained a provision that, in case of a foreclosure by judicial sale, the majority of the owners of the bonds might, in writing, request the trustees to purchase the premises for the use and benefit of the holders of all the outstanding bonds secured by the mortgage. The mortgage further provided that the right and title should vest in the trustee or trustees, and that no bondholder should have ally claim to the premises, or to the proceeds thereof, except his pro rata share of the proceeds of such purchased premises as represented in a new company or corporation to be formed for the use and benefit of the holders of the bonds secured thereby. It also empowered the trustees to take lawful measures for the interest of the bondholders, to organize a new company or corporation for the benefit of the holders of the bonds secured by the mortgage, which new company should be organized upon such terms, conditions and limitations, and in such manner as the holders of the majority of the outstanding bonds secured by the former mortgage should in writing direct! An agreement was made between the plaintiff and Cowing and others, at the time that the order before mentioned was made, whereby the plaintiff agreed to carry his bonds into the new corporation.
Upon the other hearing, no other facts upon this branch Of the case appearing, and it not being disclosed that the new company or corporation contemplated by the agreement of the parties was in fact the defendant, The New York.Elevated Railroad Company, the decision (17 Hun., 256) was that the trustee was required to organize a new company composed exclusively of former bondholders, and that the sale by him to the New York Elevated Railroad Company, was unauthorized and in violation of the trust, and the defendants were accordingly held liable to the plaintiff for the breach of trust. Upon appeal to the court of appeals, (82 N. Y., 449), while this principle does not seem to be controverted nor the decision of this court disturbed upon that ground, yet the judgment was reversed for the reason that it was legally error for the trial judge to *75 refuse to find, as matter of fact, as requested to do by the defendants counsel, that the new corporation so contemplated by the agreement of the parties was in truth the defendant, the New York Elevated Bailroad Company. On the re-trial of the issues, the evidence upon this question seems to be conclusive and the learned judge has found as a fact, that the defendant, The New York Elevated Bail-road Company was the corporation that the plaintiff agreed with the defendant Cowing and others should be the successor of the West Side Elevated Patented Bailway Company, and accordingly the complaint was dismissed upon the merits with costs. The learned counsel for the plaintiff, though he excepted to the findings of the court has not urged upon us any argument to show that the trial judge erred in this conclusion of fact. An argument however has been addressed to us based upon the proposition that though the plaintiff in his testimony failed to establish the claim made and awarded to him upon the first trial, yet he was entitled to some relief, namely, the payment by Cowing of the proportionate share of the money received by the trustee from the New York Elevated Bailroad Company which the plaintiffs’ $22,500 of bonds bore to the whole amount of bonds outstanding.
This contention must be determined by the cause of action which the plaintiff has stated in his complaint. After alleging the facts substantially as they have already been stated to be, the plaintiff then proceeds to allege in his complaint that the defendant Cowing, with full knowledge of the intent, meaning and terms of the mortgage and order and of the trust thereby imposed upon him, wholly failed to comply with or to perform the same, and that he ■wrongfully, fraudulently and contrary to his trust and contrary to the mortgage, conveyed away and converted said property to purposes other than those set forth and designed in the mortgage; that instead of conveying the property and franchise to a new corporation, with such franchise and property as the capital of a new corporation to be formed for the use and benefit of the holders of the bonds, the defendant Cowing, wrongfully, fraudulently and illegally conspired with the officers and directors of another corporation named and known as The New York Elevated Bailroad Company, and illegally and fraudulently bargained and sold and conveyed all of the franchise and property of the old corporation to the New York Elevated Bailroad Company, without any written request from the plaintiff and without any consideration to or consent or knowledge of the plaintiff.
It is further alleged that m order to induce the plaintiff, who had begun proceedings in the common pleas of New *76 York to restrain the transfer of the property to the New York Elevated Railroad Company, to discontinue such proceedings, represented to the plaintiff and his attorneys that all the charges of want of good faith and conspiracy and fraudulent intentions were wholly false; that thereupon the plaintiff consented to the entry of an order in the-foreclosure action, declaring that Cowing should purchase at said sale for the benefit of the bondholders, and that he (the plaintiff) relied upon such representations and signed the stipulation in question, “which was also signed by said Cowing for himself and his said co-conspirators,” naming them. That such representations were made by Cowing falsely and in order to induce the plaintiff to discontinue the action and injunction and so as to leave him (Cowing) unrestrained ‘ in executing said conspiracy. That after-wards the defendant Cowing, after he had bought in the property upon the sale upon the foreclosure, neglected and. refused to make a new organization, as he had agreed to do with the plaintiff, but on the contrary conveyed the whole of it, as stated before, to the defendant, The New York Elevated Railroad Company, as is alleged, in violation of the trust in the mortgage and agreement with the plaintiff. He further alleges that the Elevated Railroad Company and its officers were parties to the wrong and fraud of the trustee, and that by and through such wrong they have acquired the property of the old company. The prayer of the complaint is that the property and franchise of the old company be adjudged to be held in trust by the defendants for the benefit of the plaintiff and subject to the lien of the' mortgage and trust to the extent of the bonds held by him; that the same or so much thereof as may be necessary be sold to pay these bonds, with interest, and that the plaintiff have judgment against both defendants for the amount of such bonds and interest “by reason of their fraud and conspiracy and the violation of said trust and agreement with the plaintiff.”
It will thus be clearly seen that the action is founded upon the alleged fraud of the defendants, and the relief sought is based upon such allegations, though of course there being a general prayer for relief, the particular phraseology or form o°f the prayer, where an answer has been interposed, is not of much importance in determining what relief shall be awarded to the plaintiff. Section 1207 of the Code of Civil Procedure requires that where there is an answer, the court may permit the plaintiff to take any judgment consistent with the case made by the complaint and embraced within the issue. It has been frequently decided by the courts of this state that an action based upon allegations of fraud cannot, after failing to establish *77 the fraud upon the trial, be turned into an action _on contract. Barnes v. Quigley, 59 N. Y., 265. This claim now made and the argument of counsel are not in any respect consistent with the case made by the complaint; for the case so made was ex delictu and the claim now made is ex contractu. The latter would be a simple action in equity for an accounting, or at law for moneys had and received to the use of the plaintiff.
It appears, moreover, that the moneys which were derived by the defendant Cowing from the New York Elevated Railroad Company upon the transfer by him of the property and franchises of the old company, were all properly distributed and the share thereof belonging to the plaintiff was placed in the hands of the United^ States Trust Company, for the benefit of the plaintiff as is disclosed by the case, and he can receive it by calling for it.
Even if there were any merits in the claims as now presented, the application has come too late. The learned judge who tried the case, after much examination and having passed upon all of the questions which were presented to him, filed his opinion with the evidence and other papers which included the findings of fact and conclusions of law proposed by the defendants’ counsel himself as the same had been awarded and approved and settled by the judge. The court directed an engrossed copy of the findings as settled, to be presented for his signature, to be accompanied by a form of judgment; and it was not until the • presentation to the judge of the formal findings, long after the decision had actually been made and the opinion filed that the plaintiff’s counsel asked him to make the proposed findings and conclusions for the refusal to find which he now complains. The learned judge says that he concluded to give the plaintiff the benefit of any doubt he had upon the subject of his right to submit findings at that time, and accordingly he passed upon them and rejected them, adhering to his former conclusions. And he says no such claim as is proffered in the plaintiff’s fifth conclusion of law was made on the trial, by the plaintiff, or at any time previous to the submission of these findings and conclusions after the decision of the case. Though the judge doubtless had a discretionary power to entertain these findings provided they were not of such a character as to shift entirely the claim made by the complaint and the issues as presented by the pleadings; yet they were not, in the language of the section permitting such proposed findings to be submitted to the judge, seasonably made. It is, besides, a practice which ought not to be encouraged, for after the trial court has come to a conclusion upon the facts and the law of the case and has stated such conclusions in an opinion, he *78 ought not to be required to revise the case upon amere possibility that a party is entitled to some relief which was not thought of until after it was known he had been unsuccessful in the action.
The judgment should be affirmed with costs.
Daniels and Brady, JJ;, concur.